**PACORD, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America; A & E Industries, Inc. Defendants–Appellees.**

No. 96–56738.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1998.

Decided April 7, 1998.

Mitchell H. Segal and D. Whitney Thornton, II, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, California, for appellant.

R. Michael Underhill, Department of Justice, San Francisco, California, for appellee.

Before: BRUNETTI, THOMPSON and T.G. NELSON, Circuit Judges.

Opinion by Judge DAVID R. THOMPSON; Dissent by Judge T.G. NELSON.

DAVID R. THOMPSON, Circuit Judge:

Appellant PacOrd, Inc. ("PacOrd") provided ship repair work for the government as a subcontractor to A & E Industries ("A & E"). PacOrd contends it entered into an oral or implied-in-fact contract directly with the government in which government officials agreed to guaranty A & E's payment to PacOrd in order to induce PacOrd to work on the project. PacOrd completed its work, the government paid A & E, but A & E did not pay PacOrd. PacOrd then sued A & E for payment under the subcontract and sued the government for breach of the alleged oral or implied-in-fact contract to guaranty payment by A & E. Proceedings against A & E were halted when A & E filed for protection in bankruptcy. The district court then granted the government's motion for summary judgment, ruling that the alleged contract was not in writing as required by the Federal Acquisition Regulation ("FAR"). PacOrd appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse.

FACTS

In 1993, the United States Department of the Navy, Supervisor of Shipbuilding, Conversion and Repair (the "Navy") in San Diego, California, entered into several contracts with A & E which held a Master Ship Repair Agreement ("MSRA"). Under the contracts, A & E was to perform ship repairs on the *Constellation.* The Navy was concerned that A & E might have difficulty getting subcontractors because A & E had a history of not paying them. Commander Terry Wight, an authorized contracting officer for the Navy contacted PacOrd. Commander Wight told PacOrd that if PacOrd would work on the project under a subcontract with A & E, the Navy would require A & E to establish an "escrow" for the payment of subcontractors, and in that way the Navy would guarantee A & E's payment to PacOrd. Relying on this promise, PacOrd entered into a subcontract with A & E and completed its work on the *Constellation.*

The Navy paid A & E, but A & E failed to pay $557,597.13 it owed PacOrd. PacOrd then filed suit against A & E and the government. A & E filed for bankruptcy which barred the suit against it. The district court then granted the government's motion for summary judgment because its alleged contract with PacOrd was not in writing as required by the FAR. PacOrd appeals.

## DISCUSSION

The district court concluded as a matter of law that the government is not bound by an oral or implied-in-fact contract governed by the FAR because that regulation requires government contracts to be in writing.

For purposes of its summary judgment motion, the government concedes there are factual disputes regarding the following: (1) whether an oral or implied-in-fact contract was formed between the Navy and PacOrd in which the Navy agreed to guaranty payment to PacOrd by requiring A & E to set up an escrow account for payments to subcontractors; and (2) whether Commander Wight had contracting authority to enter into the type of guaranty contract alleged. The sole basis for the district court's summary judgment is that the contract was never reduced to writing as required by the FAR.

■ The FAR "applies to all acquisitions as defined in [48 C.F.R. section 2.101]." 48 C.F.R. § 1.104. Section 2.101 defines "acquisition" as "the acquiring by contract ... supplies or services by and for the use of the Federal Government ..." and includes "contract performance, contract administration and those technical and management functions directly related to the process of fulfilling agency needs by contract." 48 C.F.R. § 2.101. The alleged guaranty contract was the means chosen by the Navy to secure PacOrd's services as a subcontractor. Those services were intended to benefit the federal government. The FAR therefore governs the contract.

The FAR provides:
[N]o contract shall be entered into unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met.

48 C.F.R. § 1.602-1(b).

One government contract requirement is contained in 48 C.F.R. § 2.101 which defines

"contracts" as including "all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are *in writing*." 48 C.F.R. § 2.101 (emphasis added).

■ The government contends there is no applicable exception to the writing requirement of section 2.101. We disagree. Implied-in-fact contracts with the government have been enforced despite statutory or regulatory requirements that contracts be in writing. *See Narva Harris Constr. Corp. v. United States,* 216 Ct.Cl. 238, 574 F.2d 508, 510–11 (1978). In *Narva Harris,* the court considered the application of 31 U.S.C. § 200(a)(1) (1970), which stated:

[N]o amount shall be recorded as an obligation of the Government of the United States unless it is supported by documentary evidence of—(1) a binding agreement in writing between the parties thereto, including Government agencies, in a manner and form and for a purpose authorized by law.... 31 U.S.C. § 200(a)(1) (1970).

*See Narva Harris,* 574 F.2d at 509 n. 2.

While conceding that the statute may preclude enforcement of a bare express oral contract, the court in *Narva Harris* went on to state that as early as 1874[1] and more recently:

since [section 200] became effective in 1954[,] this court has often allowed recovery on an implied-in-fact contract, *see, e.g. Algonac Mfg. Co. v. United States,* 428 F.2d 1241, 192 Ct.Cl. 649 (1970). The failure, for whatever reason, of an attempt at an express contract be it written or oral, is not enough, in itself, to deprive a party of a recovery for breach where sufficient additional facts exist for the court to infer the 'meeting of the minds' necessary to separate an implied-in-fact from a pure implied-in-law contract.

*Narva Harris,* 574 F.2d at 511.[2]

In *Narva Harris,* a government representative encouraged a contractor to submit an

---

**1.** *See Clark v. United States,* 95 U.S. (5 Otto) 539, 24 L.Ed. 518 (1877) (recognizing that although a statute requiring a writing precluded recovery based completely on an express oral contract, recovery was available on an "implied contract").

**2.** The court in *Narva Harris* explained the difference between an implied-in-fact and implied-in-law contract, stating in part:

unrealistically low bid in order to get a project started. *Id.* at 509. The government representative assured the contractor that cost figures would later be adjusted to reflect the actual cost. *Id.* Relying on these assurances, the contractor proceeded with and completed the work. *Id.* The government then failed to adjust the cost figures as promised. *Id.* at 510. The contractor sued the government, which defended on the ground that the contract had to be in writing and it wasn't. The court assumed the contract had to be in writing, but held that if the plaintiff could

> prove facts, in addition to the alleged express oral contract, from which a contract may be inferred ... the statutorily mandated preclusion of recovery on an oral contract (which we assume arguendo, without deciding) will not totally bar plaintiff's recovery in this action.

*Id.* at 512.

The present case is analogous to *Narva Harris.* In both cases the government made assurances to a service provider in order to secure the desired performance. In neither case did the parties execute written contracts as required. And, PacOrd, like Narva Harris Construction, proceeded and completed its work in reliance on the government's assurances.

Thus, PacOrd, like Narva Harris Construction, should be permitted to establish at trial, the existence of an implied-in-fact contract. If PacOrd can do so, recovery is not barred by the FAR requirement that the contract must be in writing.

The authorities cited by the government do not persuade us otherwise. In several cases, the government was not contractually bound because the government agent had no contracting authority or exceeded what authority he had. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–386, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947) (an agent selling government crop insurance had no authority to insure certain crops which were specifically excluded by regulation); *Edwards v. United States,* 22 Cl.Ct. 411, 421 (1991) (not only

was there a failure to establish an implied-in-fact contract, the Postal Service agent had no authority to enter into the agreement); *Aronson v. Resolution Trust Corp.,* 38 F.3d 1110, 1112–1113 (9th Cir.1994) (bank CEO who agreed to a generous retirement package for a new vice president lacked authority because banking regulations required approval of such contracts by the board of directors); *New America Shipbuilders, Inc. v. United States,* 871 F.2d 1077, 1080 (Fed. Cir.1989) (government official had not followed procedures to obtain the requisite contracting authority).

Other cases relied upon by the government did not involve implied-in-fact contracts. In *City of El Centro v. United States,* 922 F.2d 816, 823 (Fed.Cir.1990), no contract arose where there was at best ambiguous manifestation of assent and the government did not receive any consideration for its alleged promise. *See also Mil–Spec Contractors, Inc. v. United States,* 835 F.2d 865, 868 (Fed.Cir.1987) (no implied-in-fact contract arose where the government agent was providing assurances of a *future* contract); *Schweiker v. Hansen,* 450 U.S. 785, 790, 101 S.Ct. 1468, 1471–72, 67 L.Ed.2d 685 (1981) (holding the Court could not overlook a valid regulation requiring a writing when considering an *application for government benefits* ).

## CONCLUSION

Although the FAR governs the alleged contract between the Navy and PacOrd, 48 C.F.R. § 2.101 does not render the contract unenforceable so long as PacOrd can establish sufficient facts, beyond a mere oral agreement, for the court to infer the existence of an implied-in-fact contract. *Narva Harris,* 574 F.2d at 512. The district court erred as a matter of law when it granted the government's motion for summary judgment. We REVERSE and REMAND for further proceedings in the district court.

Given our disposition of the case, we need not rule on PacOrd's motion for a limited

---

a contract implied in fact is a true contract, the agreement of the parties being inferred from the circumstances, while a contract implied in law is but a duty imposed by law and treated

as a contract for the purposes of a remedy only.

*Narva Harris,* 574 F.2d at 511, n. 6.

remand. The entire matter is remanded to the district court.

**REVERSED and REMANDED.**

T.G. NELSON, Circuit Judge, dissenting.

The executive branch of the Government has made it clear that contracts coming within the FAR must be in writing. This is not a whim or caprice by the United States. With thousands of contracts and hundreds of billions of dollars in play every year, the Government simply has to know to whom and for what it is obligated.

48 C.F.R. § 1.602–1(b), quoted by the majority, furnishes the gateway to the proper analysis:

> No contract shall be entered into unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met.

This portion of the FAR is followed by § 2.101 which defines contract:

> Contract means a mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, *except as otherwise authorized, are in writing.*

48 C.F.R. § 2.101 (emphasis added).

The FAR specifically limits the authority of contracting officers when it provides that "Contracting officers ... may bind the Government only to the extent of the authority delegated to them" 48 C.F.R. § 1.602–1. A contracting officer must thus be specifically authorized to enter into oral contracts.

PacOrd has not shown that anyone connected with the alleged indemnity contract was "otherwise authorized" to enter into an oral agreement. In the absence of such authority, the oral contract can have no validity.

This case is controlled, in my view, by *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), where the Court said:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power.

PacOrd is an experienced government contractor and it is certainly not unfair to charge it with knowledge of the authority of those with whom it deals. But even if PacOrd could make a showing that it was an unsophisticated new entrant into the business, that would not protect it under *Merrill:*

> Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.... [T]hat "Men must turn square corners when they deal with the Government," does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

*Id.* at 385, 68 S.Ct. at 3.

The majority relies on the *Narva Harris* case. There are only two problems with the *Narva Harris* case:

1. It was not decided under the FAR.

2. It is just plain wrong. It does not even cite *Merrill,* nor explain why the claimed lack of authority to enter into the oral contract at issue in *Narva Harris* did not preclude recovery. Authority to enter into a written contract cannot be construed as impliedly including authority to enter into an oral contract without thereby nullifying the requirement of a written contract.

For the above reasons, I respectfully dissent.